**NOT FOR PUBLICATION**  **CLOSED**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| OCTAVIO BAUTISTA, | : | |
| Petitioner, | : | Civil Action No. 05-1962 (JAP) |
| v. | : | **OPINION** |
| UNITED STATES OF AMERICA, | : | |
| Respondent | : | |

Appearances:

Octavio Bautista
Fed. Reg. No. 25851-050
FCI Schuylkill
Federal Correctional Institution
P.O. Box 759
Minersville, PA  17954
    Pro Se

Christopher Christie, United States Attorney
Lisa Rose, Assistant U.S. Attorney
970 Broad Street, Suite 700
Newark, NJ  07102
    Attorneys for the United States of America

PISANO, District Judge:

Before the Court is Octavio Bautista's *pro se* petition to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  The United States has filed an answer in response to Bautista's petition.  The Court resolves this petition without oral argument, as permitted by Federal Rule of Civil Procedure 78.  For the reasons set forth below, the Court denies Bautista's petition.

**I.  Background**

On January 16, 2004, a federal Grand Jury returned a one-count Indictment charging Bautista, an alien who was deported from the United States subsequent to his conviction for the commission of an aggravated felony, with reentering the United States, in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2).

On April 14, 2004, Bautista, with the assistance of a Spanish-speaking interpreter, and his attorney, K. Anthony Thomas, Esq., executed a plea agreement containing five stipulations.  Pursuant to these stipulations, the United States and the petitioner agreed that:  (1) the offense of conviction and relevant conduct involved the illegal reentry into the United States subsequent to a conviction for the commission of an aggravated felony for a base offense level of 8; (2) Bautista previously was deported from the United States after a conviction for an aggravated felony that is a crime of violence, therefore, Specific Offense Characteristic (b)(1) applied for an increase of 16 levels; (3) Bautista was entitled to a downward adjustment of 2 levels for acceptance of responsibility; (4) Bautista was entitled to an additional decrease of 1 level for "early" acceptance of responsibility; and (5) the parties reserved the right to litigate any other issue relating to sentencing.  Accordingly, Bautista pled to a total offense level of 21 under the

United States Sentencing Guidelines (the "U.S.S.G."), which advised a range of 57 to 71 months.

On July 20, 2004, the Court sentenced Bautista to a term of imprisonment of 57 months, a supervised release of two years, and a special assessment of $100. The Court waived any fine due to Bautista's inability to pay. The final judgment of conviction was filed with the Clerk of the Court on July 20, 2004. Bautista did not file a notice of appeal or a request with the Clerk of the Court to have a notice of appeal filed on his behalf.

On April 11, 2005, Bautista filed a form petition to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. On May 3, 2005, the Court executed a Notice and Order advising Bautista of his rights and obligations pursuant to *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999). Subsequently, on September 15, 2005, Bautista filed a memorandum of law in support of his petition. In his petition, Bautista argues (1) that he received ineffective assistance of counsel; and (2) that his sentence was imposed unlawfully in violation of *U.S. v. Booker*, 543 U.S. 220 (2005) as well as the International Covenant on Civil and Political Rights.[1] Bautista requests an evidentiary hearing as to these claims and a re-sentencing event to "correct the standing sentence as is appropriate and proper." Petitioner's Brief ("Pet. Br.") at 9.

## II. Legal Discussion

### A. The § 2255 Standard

A prisoner in federal custody may file in the trial court a motion challenging the lawfulness of his sentence. 28 U.S.C. § 2255; *E.g., Morelli v. United States*, 285 F. Supp. 2d 454, 458 (D.N.J. 2003), *cert. denied*, 528 U.S. 820 (1999). A prisoner has been unlawfully

---

[1] Although Bautista presents his arguments in six point headings, his arguments are repetitive and distill down to these primary issues.

sentenced if his sentence "(1) was imposed in violation of the Constitution or laws of the United States; (2) was imposed by a court lacking jurisdiction; (3) was in excess of the maximum authorized by law; or (4) is otherwise subject to collateral attack." *Morelli*, 285 F. Supp. 2d at 458 (citing 28 U.S.C. § 2255). To establish a right to habeas corpus relief, a prisoner must demonstrate that the sentence has a "'fundamental defect" resulting in "a complete miscarriage of justice'" or "'an omission inconsistent with the rudimentary demands of fair procedure.'" *Id*. at 458-9 (quoting *U.S. v. DeLuca*, 889 F.2d 503, 506 (3d Cir. 1989) ). Reading liberally Bautista's pleading, as the Court must do in resolving this *pro se* petition, *Boag v. McDougall*, 454 U.S. 34 (1982); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court here considers Bautista's arguments.

### B. Ineffective Assistance of Counsel

The Supreme Court announced the standard for reviewing a claim of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 686 (1984). First, a defendant must show that counsel's performance was deficient. *Id*. at 687. In determining whether counsel's performance was deficient, the reviewing court must ask whether, considering all the circumstances, counsel's assistance was reasonable under prevailing professional norms. *Id*. at 688. Moreover, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689.

Second, the petitioner must show that the deficient performance of counsel prejudiced the defense. *Id*. at 688. To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 687; *see also Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir. 1992) (same),

*cert. denied*, 507 U.S. 954 (1993).  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him."  *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

Bautista claims that his counsel was ineffective and that his "legal counsel's poor performance led to . . . [Bautista] serving an artificially and unnecessarily long prison sentence."  Pet. Br. at 14.  Bautista has raised two alleged failures on the part of his counsel that form the basis for his claim:  (1) ineffective assistance for allegedly failing to keep Bautista fully informed and involved in the plea and sentencing process; and (2) ineffective assistance for allegedly failing to address Bautista's objection to the use of his prior conviction for aggravated assault as an enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A).  Specifically, Bautista contends that he "never would have offered a guilty plea to the court" if he knew the use of his prior conviction for a crime of violence would have enhanced his sentence pursuant to U.S.S.G. § 2L1.2(b)(1)(A).  Pet. Br. at 6.  However, Bautista's allegations are contradicted by the record.

By Bautista's own admission, his attorney visited him in prison and reviewed information received from the Government.  *See* Transcript of Plea dated April 14, 2004 ("Tr. Plea.") 3:14-18.  Bautista stated to the Court that his attorney answered all of his questions and that he was satisfied with his attorney's advice.  Tr. Plea 3:19-22.  Petitioner confirmed that his counsel described the sentencing guidelines and explained that Bautista would be sentenced under a total offense level of 21.  Tr. Plea 9:11-17.  The plea agreement, which unambiguously sets out all the pertinent information with respect to the plea, including the fact that Bautista faced a statutory maximum 20-year sentence, was interpreted twice for petitioner from English into Spanish, Bautista's native language.  Tr. Plea 6:17-21; *see also* Plea Agreement at page 5.  Bautista, who

executed the plea agreement, confirmed that he fully understood the contents of the plea agreement, had enough time to discuss it with his attorney, and was satisfied with his attorney. Tr. Plea 3:11-13.  These facts demonstrate that Bautista was kept informed and involved in the plea and sentencing.

Furthermore, any failure on the part of petitioner's counsel to raise Bautista's alleged objection to the enhancement does not indicate a deficiency in counsel's performance.  The Court must evaluate performance under the law as it existed at the time.  *Strickland* at 689.  The primary basis for petitioner's objection -- namely, *Booker* -- did not exist at the time of Bautista's sentencing.  Petitioner's counsel was acting under the prevailing professional norms at that time.

Moreover, despite being given every opportunity to do so, Bautista did not object to the use of his prior conviction as an enhancement at his sentencing, nor did he complain that his counsel failed to raise such an objection.  Rather, as the Government points out, Bautista expressly stipulated and allocuted to the enhancement at issue and represented to the Court that he was satisfied with the representation his counsel provided.  Tr. Plea 3:19-22.  Additionally, at his sentencing, petitioner was afforded the opportunity by the Court to state "anything [he] would like to say."  Tr. Sent. 6:10 to 7:15.  Bautista only apologized for his wrongdoing and did not raise any concerns or questions about his prior conviction being used as an enhancement.  Tr. Sent. 7:16 - 8:1.  Given the facts stated above, Bautista has failed to establish that his counsel's representation was deficient in any way.  Consequently, Bautista has not satisfied the first prong of *Strickland*.

Nor has Bautista shown that he suffered any prejudice from his counsel's alleged failure to object to the enhancement.  To prove prejudice, petitioner must show "that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694. Notably, at sentencing, the Court stated that Bautista's sentence would be the same under either the guidelines or the Court's discretion. Tr. Sent. 9:24 to 10:6. As a result, Bautista cannot prove that his sentence would have been different if his counsel had acted differently.

Bautista has not demonstrated that his counsel's performance was deficient under the *Strickland* analysis. Accordingly, Bautista's claims of ineffective assistance of counsel do not entitle him to relief under § 2255.

### C. *Booker* and Treaty Claims

Petitioner claims that by raising his base offense level by 16 levels pursuant to U.S.S.G. § 2L1.2 (b)(1)(A) for illegal reentry subsequent to a conviction for the commission of a crime of violence, the Court violated his Sixth Amendment right because the prior conviction was "never heard by a jury or subjected to jury standards." Pet. Br. at 5. Bautista argues that, as such, his sentence was imposed in violation of *U.S. v. Booker*, 543 U.S. 220 (2005). Bautista also asserts that his sentence violates the International Covenant on Civil and Political Rights.[2]

---

[2] Petitioner appears to indirectly raise an additional argument. Petitioner provides an exhibit denominated "Exhibit 3-E-1" which purports to be an unsigned indictment. This indictment is identical to the signed indictment on file with the Clerk of the Court. In a statement across the top of the exhibit, Petitioner argues that the unsigned agreement was presented to him "in violation of [his] 6th Amendments rights." Ex. 3-E-1 (notation at top of exhibit). Even if it is true that petitioner received only the unsigned document, he cannot show that he was prejudiced by the unsigned indictment. *See Hobby v. United States*, 468 U.S. 339, 345 (1984) ("[T]he absence of the foreman's signature is a mere technical irregularity that is not necessarily fatal to the indictment."). The unsigned indictment described the charges against him and informed him of the accusations he faced so that he could enter a knowledgeable plea. Moreover, an identical signed copy was filed with the Clerk of the Court on January 16, 2004. There was, therefore, no prejudice.

Also with respect to the indictment, the petitioner appears to argue that the Court lacked

### 1. Bautista's Claim Under *Booker*

In *Booker*, the Court held that the provision of the federal sentencing statute that make the sentencing guidelines mandatory is unconstitutional and severed that provision from the statute, making the balance of guidelines system advisory. Thus, there is no doubt that *Booker* announced a new rule of criminal procedure. *Lloyd v. United States*, 407 F.3d 608, 611 (3d Cir. 2005) *cert. denied* 126 S.Ct. 288 (2005).

A new rule of criminal procedure generally is not "applicable to those cases which have become final before the new rule is announced." *Lloyd* 407 F.3d at 611. The same bar applies to a "federal habeas corpus petitioner who wishes to collaterally attack his conviction, unless an exception applies." *Id.* In order to be granted relief here, petitioner must be able to show that *Booker* should be made retroactively applicable to cases on collateral review, because Bautista's conviction became final before *Booker* was decided.

In *Lloyd*, the Third Circuit concluded that *Booker* does not apply retroactively using a three-step inquiry set forth in *Teague v. Lane*, 489 U.S. 288 (1989): (1) whether the conviction "became final prior to the Supreme Court's decision in *Booker*"; (2) "whether the rule announced in *Booker* qualifies as 'new'"; and (3) "whether the new procedural rule qualifie[d] under . . . *Teague*'s ['watershed exception'] to the non-retroactive application of rules of criminal procedure." *Lloyd*, 407 F.3d at 611-612. Applying this same three-step analysis to Bautista's

---

jurisdiction to sentence him because the indictment allegedly lacked unspecified information relevant to the enhancement of petitioner's sentence. While the Court finds no defect to the indictment, it notes that petitioner's argument nevertheless fails in light of *United States v. Cotton*, 535 U.S. 625, 630 (2002). In *Cotton*, the Supreme Court held that "defects in an indictment [in *Cotton*, the omission of drug quantity] do not deprive a court of its power to adjudicate a case." *Cotton*, 535 U.S. at 630.

claims, it is clear that *Booker* may not be applied retroactively to the petitioner's habeas case.

### a. Bautisa's Conviction Became Final Prior to the *Booker* Decision

On July 20, 2004, the Court filed the final judgment of conviction. Because Bautista did not file a timely notice of appeal or a request with the Clerk of the Court to have a notice of appeal filed on his behalf, Fed. R. App. P. 4(b)(1)(A), his conviction became final on August 1, 2004, ten days after entry of judgment. As *Booker* was decided on January 12, 2005, Bautista's sentence became final prior to *Booker*.

### b. *Booker* announces a New Rule of Criminal Procedure

The Third Circuit held that *Booker* qualifies as a new rule of criminal procedure "for purposes of *Teague*." *Lloyd*, 407 F.3d at 613. The *Lloyd* court reviewed the "legal landscape" at the time of the petitioner's conviction to determine whether the "unlawfulness' of the [petitioner's] sentence was apparent to all reasonable jurists," *Id*. (quoting *Beard v. Banks*, 542 U.S. 406, 413 (2004)), and concluded that *Booker* was not necessarily "'dictated' by past precedent." *Id*. Thus the *Lloyd* court, consistent with every court of appeals that had considered the issue, concluded that rule was "new. " *Id*.

### c. *Booker* Does Not Fall Within *Teague*'s Exception for "Watershed Rules"

A new rule of criminal procedure is generally not applicable to federal habeas cases on collateral review unless a specific exception applies. *See Teague v. Lane*, 489 U.S. 288 (1989). The only exception of potential relevance here is the "watershed exception," which provides that only a "watershed [rule] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding" may be retroactive. *Lloyd*, 407 F.3d at 613 (quoting *Beard*, 542 U.S. at 417.)

The "watershed exception" "is extremely narrow . . . [and] the Supreme Court... has 'yet to find a new rule that falls under the *Teague* exception.'"  *Id*. at 614.  The Third Circuit explained that "*Teague*'s [watershed] exception is reserved for rules that . . . improve the accuracy of trial and alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding."  *Id*. (internal quotations and citations omitted).  The *Booker* decision did not announce a new rule of criminal procedure that significantly increases the "certitude" or "accuracy" of the sentencing process because the U.S.S.G. system remains the same.  *Id*. at 615.  Accordingly, *Booker*'s new rule of criminal procedure does not qualify under the "watershed" exception to *Teague*'s non-retroactivity bar.  *Id*.  Consequently, petitioner's claims under *Booker* do not entitle him to relief under § 2255.

### 2.  International Covenant on Civil and Political Rights

Although petitioner argues that he is entitled to relief pursuant to the International Covenant on Civil and Political Rights ("ICCPR"), this particular treaty is not self-executing and has not been ratified by Congress.  *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 734-35 (2004) ("The United States ratified the [ICCPR] on the express understanding that it was not self-executing and so did not itself create obligations enforceable in the federal courts."); *see also Leinenbach v. Williamson*, No. 04-CV-2442, 2005 WL 1430082, at *2 (M.D. Pa. June 17, 2005) (same); *Jama v. U.S. I.N.S.*, 22 F.Supp.2d. 353, 364-65 (D.N.J.1998) (noting that Congress has not passed legislation implementing the ICCPR).  Consequently, petitioner's claim under the ICCPR fails.

### D.  Request for an Evidentiary Hearing

Bautista requests an evidentiary hearing as to the aforementioned claims and a re-

sentencing event to "conform his sentence with the reality of his situation and crime." However, an evidentiary hearing is not warranted in this case because all material facts are a matter of record and not subject to dispute. The "motions and files and records of the case show conclusively that the movant is not entitled to relief . . . ." *Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989).

### E. Certificate of Appealability

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, the applicant must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 494 (2000). Petitioner has failed to make a showing that would satisfy the requirements for a certificate of appealability. Consequently, the Court shall not issue a certificate of appealability.

### III. Conclusion

For the reasons explained above, Petitioner Bautista's petition to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is denied without the issuance of a certificate of appealability.

    /s/ Joel A. Pisano
    JOEL A. PISANO U.S.D.J.

Orig: Clerk
cc: All parties
      File